UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| SWAN LAKE HOLDINGS, LLC, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-228-PPS |
| | ) | |
| YAMAHA GOLF CART COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Mark Twain once said that golf was a "good walk spoiled." That was back in the day when golf was exclusively a walking sport. If someone was going to treat themselves, they might splurge on a looper who would lug their clubs around, keep a keen eye on wayward shots and read greens. But sometime in the last thirty years, that began to change. Golf carts became the rage, and walking the course largely went the way of the 1 iron, the metal spike, and drivers with heads smaller than the average cantaloupe. With progress comes litigation. This case is a dispute between Yamaha Golf Carts and the Swan Lake Golf Resort. Swan Lake contends that Yamaha breach a warranty when it sold them bum golf carts. Yamaha has moved for summary judgment [DE 19]. For the reasons explained below, Yamaha's motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Swan Lake is a resort in Plymouth, Indiana with two demanding 18-hole golf courses [DE 1]. In 2006, Swan Lake decided to upgrade its fleet of golf carts; so it began meeting with representatives of golf cart manufacturers, including Yamaha and its sales guy, Rich Brown

[DE 31-7 at 2]. One of Swan Lake's chief concerns in selecting a new fleet of golf carts was to insure that the new carts would be compatible with the GPS units on Swan Lake's existing golf carts [*Id*. at 3].

For the uninitiated, GPS is another innovation in the sport of golf. A computer screen is mounted in a golf cart and by activating the system it allows the player to know the exact yardage to the green and the pin (and for duffers, it allows them to know how far away a water hazard is, for example). It's a bit ironic, but even the cart-mounted GPS units have gone the way of the Edsel in the advent of hand held units. In any event, Swan Lake had already invested almost $400,000 in the GPS system—more than it had invested in the golf carts themselves [*Id*.].

Swan Lake's golf pro, Pat Bayley, led Swan Lake's search for new golf carts, including its discussions with Yamaha. In early 2006, Bayley specifically asked Brown whether Swan Lake's GPS units would function with the new Yamaha carts [*Id*. at 4]. Brown responded that compatibility would not be a problem [*Id*.]. Indeed, Brown told Bayley that other users had installed the same type of GPS units on Yamaha's carts, and Yamaha was not aware of any compatibility problems [*Id*. at 5]. Brown also told Swan Lake's head mechanic, Mark Fujawa, that Yamaha's carts would function with Swan Lake's GPS system [DE 31-8 at 5].

On the basis of these discussions, in April 2006, Swan Lake agreed to purchase 110 of the Yamaha carts for $361,790 [DE 31-1, ¶ 5]. Yamaha provided Swan Lake with the carts and

a one-page, five-year limited warranty [DE 21-2].[1] The warranty specifically excludes failures caused by, among other things, the installation of non-original equipment:

> **GENERAL EXCLUSIONS** from this warranty shall include any failures caused by . . . (c) Installation of parts or accessories that are not original equipment.

[DE 21-2.] The warranty further states, in bold-face type and all capital letters, that Yamaha "makes no other warranty of any kind, express or implied," and that "all implied warranties of merchantability and fitness for a particular purpose which exceed the obligations and time limits stated in this warranty are hereby disclaimed" [*Id*.].

Notwithstanding the warranty's language excluding coverage for failures due to non-original equipment, Swan Lake transferred the GPS units to the Yamaha carts [DE 20 at 2]. The batteries on the Yamaha carts subsequently began to wear down prematurely. By late May 2006, 10 or 11 of the carts had developed battery failure problems [DE 31-6 at 10]. By late November 2006, 60 carts had become disabled by failed batteries [DE 31 at 3; DE 31-7 at 46].

Shortly thereafter, Swan Lake brought the problem to Yamaha's attention [DE 31 at 4]. In February 2007, Yamaha responded by agreeing to replace the original batteries in all 110 of the carts with larger capacity batteries [DE 31 at 4; DE 31-2, ¶ 3; DE 31-7 at 7]. At that time, Boylan Golf Carts, Yamaha's warranty service provider, tested the GPS units, and told Swan Lake it did not believe the GPS units were causing the batteries to fail [DE 31-2, ¶ 10].

The larger capacity batteries worked for most of the remainder of 2007. But by the end of the year, they also began to fail prematurely [DE 31-2, ¶ 3]. So, in early 2008, Swan Lake

---

[1]Swan Lake's complaint purports to attach two warranties: one attached as Exhibit C [DE 1, ¶ 9], and another attached as Exhibit B [*Id*.]. Exhibit B appears to be a bill of lading, not a warranty [*Id*., Ex. B]. Exhibit C, however, is the same warranty the parties agree Yamaha provided to Swan Lake in connection with Swan Lake's golf cart purchase. [*See* DE 21-2.] The Court assumes Swan Lake is suing on the warranty attached as Exhibit C.

replaced the batteries in 22 of the carts, with Boylan contributing 12 new batteries and Swan Lake supplying the other 10 on its own [DE 31-2, ¶¶ 4-5].

Around the time of this 2008 battery replacement, Boylan suggested that the GPS units might be the source of the battery problem after all [DE 31 at 5; DE 31-6 at 16]. In light of this news, Swan Lake sent a March 17, 2009 letter informing Yamaha that it was revoking its acceptance of the carts [DE 31 at 5; DE 31-1, Ex. B]. Days later, Swan Lake filed this suit against Yamaha in Indiana state court [DE 1]. Yamaha then properly removed the matter to this Court based on diversity jurisdiction [DE 2].

In its pending summary judgment motion, Yamaha contends that Swan Lake's breach of warranty claim is a loser because the warranty excludes failures caused by the installation of the GPS units. Yamaha further contends that the warranty's exclusion of implied warranties bars Swan Lake from recovering under a theory of breach of the implied warranties of merchantability and fitness for a particular purpose. Yamaha also argues that the warranty's exclusion of consequential and incidental damages precludes Swan Lake from recovering such damages.

## DISCUSSION

As a preliminary matter, I must determine which state's law applies to Swan Lake's claims. Neither party has raised a choice-of-law issue, and the briefing on both sides assumes that Indiana law governs. When sitting in diversity, this Court is required under the *Erie* doctrine to apply Indiana substantive law as forum law. And the presumption is that Indiana law, as forum law, will govern any state law issue, and that choice-of-law issues, if raised, will be decided under Indiana's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313

U.S. 487 (1941); *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co.*, 544 F.3d 752, 759 (7th Cir. 2008).

I need not, however, conduct a choice-of-law analysis to determine whether Indiana law applies in this case. Where, as here, the parties do not identify a conflict between the bodies of state law that might apply to their dispute, courts apply the law of the forum state – here, Indiana. *See Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 299 (7th Cir. 1985) ("Where parties fail to raise a possible conflict of law, the better rule . . . is that the substantive law of the forum controls."); *see also Gould v. Artisoft, Inc.,* 1 F.3d 544, 549 n.7 (7th Cir. 1993) (same); *National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.*, 779 F.2d 1281, 1284-85 (7th Cir. 1985) (same). Accordingly, Indiana law governs Swan Lake's claims.

**I.     Breach of Warranty**

Swan Lake's breach of warranty claim survives summary judgment, notwithstanding the warranty's exclusion of failures due to non-original equipment, because there is a fact dispute as to the cause of the battery failure.

Under Indiana law, to prevail on a breach of warranty claim, the plaintiff must show (1) the existence of a warranty; (2) breach of that warranty; and (3) that the breach was the proximate cause of the loss sustained. *See Irmscher Suppliers, Inc. v. Schuler,* 909 N.E. 2d 1040, 1048 (Ind. Ct. App. 2009); *Frantz v. Cantrell*, 711 N.E. 2d 856, 860 (Ind. Ct. App. 1999); *Peltz Const. Co. v. Dunham*, 436 N.E. 2d 892, 894 (Ind. Ct. App. 1982). "The standard to be applied in determining whether or not there has been a breach of warranty is one of reasonableness in light of surrounding circumstances." *Barnes v. Mac Brown and Co., Inc*., 342 N.E. 2d 619, 621 (Ind. 1976).

The parties do not dispute the existence of the written warranty, or that Swan Lake has been injured as a result of the battery failure problem. So the dispute comes down to whether the battery failure is a breach of the promise that Yamaha made to Swan Lake in its warranty.

Yamaha's warranty covers "faulty workmanship" performed by Yamaha, and "defects" in "material from the factory" [DE 21-2]. But it excludes failures caused by the installation of non-original equipment [*Id*.]. The parties do not dispute that the GPS units are not "original equipment" within the meaning of the warranty. Thus, if the battery failure resulted from Yamaha's workmanship, or defects in material, the warranty covers Swan Lake's claim. If, on the other hand, the battery failure resulted from the installation of the GPS units, then Swan Lake's claim falls outside of the warranty.

There is certainly evidence that the GPS units caused the batteries to fail. As Swan Lake observes, Boylan had determined during the 2008 battery replacement that the GPS units may be the source of the problem [DE 31 at 5]. If there were no other explanation for the problem, then Swan Lake's claim would fall outside the warranty.

But Swan Lake presents evidence that the battery failure is not caused by the GPS units. Ted Fujawa, Swan Lake's cart mechanic, has testified that he believes the problem is due to a faulty charging system, rather than the GPS units [DE 31-6 at 12]. And Mark Fujawa avers that he "did not believe that the GPS system was actually contributing to the dead batteries" [DE 31-2, ¶ 10]. Swan Lake's expert, Jeffery Evans, tested the carts and also concluded that the battery failure was due to something other than the GPS units [DE 31-3 at 14]. Dr. Evans opines that "[i]t is likely that a design error and/or a mismatch of charging system components during manufacture . . . can cause this type of charging system behavior" [DE 31-3 at 14].

Yamaha does not address this evidence, including the evidence that Boylan, its own service provider, initially did not believe the GPS units were causing the batteries to fail. Rather, Yamaha contends incorrectly that the parties do not dispute that the carts' "battery power is sufficient without the GPS system" [DE 20 at 6].

Swan Lake's evidence that the battery failure was caused by something other than the GPS units, like a faulty charging system, is enough to raise a fact dispute as to the cause of the battery failure. Accordingly, Swan Lake is entitled to a trial on its breach of warranty claim.

## II.     Breach of Implied Warranty

Swan Lake may also proceed on a claim for breach of the implied warranty of fitness for a particular purpose, notwithstanding the warranty's attempted disclaimer of any implied warranties. Under Indiana law, the implied warranties of merchantability and fitness for a particular purpose attach to any sale, so long as the seller is a merchant with respect to goods of that kind, unless the seller specifically excludes or disclaims them. *See Woodruff v. Clark County Farm Bureau Coop. Ass'n*, 286 N.E. 2d 188, 194-95 (Ind. 1972). These implied warranties "are imposed by operation of law for the protection of the buyer, and they must be liberally construed in favor of the buyer." *Id.*

Swan Lake has alleged facts that support a claim for breach of the implied warranty of fitness for a particular purpose. An implied warranty of fitness for a particular purpose exists, unless excluded, where the seller reasonably knows about that purpose, and knows that the buyer is relying on the seller to select goods suitable for that purpose. IC § 26-1-2-315. In an action for breach of the implied warranty of fitness for a particular purpose, the buyer must show that: (1) the seller had reason to know the buyer's particular purpose; (2) the seller had reason to believe the buyer was relying on the seller's skill and judgment; and (3) the buyer relied on the

7

seller's skill and judgment. IC § 26-1-2-315; *see also Paper Mfrs. Co. v. Rescuers, Inc.*, 60 F. Supp. 2d 869, 881 (N.D. Ind. 1999).

Swan Lake alleges in its complaint that Yamaha knew Swan Lake intended to install GPS units in Yamaha's carts, and that Yamaha represented that its carts would be suitable for this purpose [DE 1, ¶ 2]. These allegations, and the supporting evidence that Swan Lake supplies in its response, clearly implicate the implied warranty of fitness for a particular purpose.[2] Even though the complaint does not specifically allege a claim for an implied warranty for a particular purpose, that is unnecessary. *See Hatmaker v. Memorial Medical Center*, --- F.3d ---, 2010 WL 3385191, at *1 (7th Cir. Aug. 30, 2010) ("[P]laintiffs in federal courts are not required to plead legal theories.").

Yamaha does not dispute that it assured Swan Lake that the carts would be compatible with the GPS units, or that Yamaha knew that Swan Lake relied on these assurances in purchasing the carts. This narrows the issue on summary judgment to whether Yamaha's attempted disclaimer of any implied warranties was effective.

Disclaimers of implied warranties are not favored and are strictly construed against the seller for reasons of public policy. *Paper Mfrs.*, 60 F. Supp. 2d at 879; *Woodruff*, 286 N.E. 2d at 196. Under Indiana law, contracting parties may exclude or modify the implied warranty of fitness for a particular purpose with writing that conspicuously and expressly mentions the

---

[2]The Court will not also assume that Swan Lake has alleged a claim for breach of the implied warranty of merchantability. The implied warranty of merchantability is quite different from the warranty of fitness for a particular purpose. *Pizel v. Monaco Coach Corp.,* 364 F. Supp. 2d 790, 793 (N.D. Ind. 2005)*; Frantz v. Cantrell*, 711 N.E. 2d 856, 859 n.1 (Ind. Ct. App. 1999). In short, the implied warranty of merchantability covers the consumer's reasonable expectations that a good will be fit for its ordinary use. IC § 26-1-2-314; *Pizel,* 364 F. Supp. 2d at 793. The allegations in Swan Lake's complaint do not support a claim for breach of the implied warranty of merchantability.

8

exclusion or modification. IC § 26-1-2-316; *see also Paper Mfrs.*, 60 F. Supp. 2d at 879. IC § 26-1-1-201(10) explains that a "term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. . . . Language in the body of a form is conspicuous if it is capitalized or in larger, or other contrasting, type or color." Whether a term or clause is conspicuous is a question of law for the court. *Jones v. Abriani*, 350 N.E. 2d 635, 645 (Ind. 1976).

I find that Yamaha's attempted disclaimer of implied warranties was not effective. The pertinent paragraph appears as follows toward the bottom of Yamaha's one-page warranty:

> **ALL IMPLIED WARRANTIED OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WHICH EXCEED THE OBLIGATIONS AND TIME LIMITS STATED IN THIS WARRANTY ARE HEREBY DISCLAIMED BY YAMAHA MOTOR MANUFACTURING CORPORATION OF AMERICA AND EXCLUDED FROM THIS WARRANTY.**

[DE 21-2.]

This exclusion obviously is in writing. And the large, bold-face type and all capitals calls attention to the disclaimer language, setting it apart from the rest of the warranty's language. Indeed, considered in isolation from the rest of the facts in this case, the language itself appears to meet Indiana's conspicuousness requirement. *See Carlisle v. Deere & Co.*, No. 3:06 CV 710, 2008 WL 2168995, at *4 (N.D. Ind. May 22, 2008) (exclusion written in all capitals and located under a bolded and capitalized section heading entitled "no representations or implied warranty/remedy" was effective); *Roberts v. Homelite Div. of Textron, Inc.*, 649 F. Supp. 1440, 1444 (N.D. Ind. 1986) (disclaimer written in large black type and under heading "limitation of warranty" was conspicuous); *see also Perry v. Gulf Stream Coach, Inc.*, 814 N.E. 2d 634, 646 (Ind. Ct. App. 2004).

9

I am troubled, however, by the lack of evidence as to whether Swan Lake had notice of this attempted disclaimer before or at the time it purchased the golf carts. Neither party has addressed the issue of how and when Swan Lake received the warranty. A conspicuousness requirement is meaningless if the buyer can't read the warranty at the time of the sale, or reads the warranty only after the fact. Courts have found implied warranty disclaimers ineffective where they appear within a document that the buyer receives only after the sale has been finalized, on the ground that this reflects a unilateral attempt by the seller to avoid warranty obligations that have already arisen. *See Paper Mfrs.*, 60 F. Supp. 2d at 879; *see also Kehrer Broth. Const., Inc. v. Custom Body Co., Inc.*, No. 05 CV 246, 2008 WL 182503, at *8 (S.D. Ill. Jan. 18, 2008) (collecting cases).

My concern here is heightened by the fact that the warranty is not signed by Swan Lake and does not contemplate a signature. Indiana courts have found the absence of a signature to count against the effectiveness of an implied warranty disclaimer. *See Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E. 2d 1078, 1084 (Ind. 1993) (disclaimer that appeared on reverse side of purchase order that did not require signature was not conspicuous), *abrogated on other grounds, Hyundai Motor Am., Inc. v. Goodin*, 822 N.E. 2d 947 (Ind. 2005); *Jerry Alderman Ford Sales, Inc. v. Bailey*, 294 N.E. 2d 617, 619 (Ind. Ct. App. 1973) (disclaimer located at the bottom of the back side of a sales contract that did not require the purchaser's signature was not conspicuous).

And, importantly, Swan Lake has presented undisputed evidence that Yamaha's sales representative knew that Swan Lake specifically sought to purchase golf carts that would function with the GPS system, and assured Swan Lake that Yamaha's carts would fit this purpose. This contributes to my doubts as to whether Swan Lake had notice of the warranty's

10

disclaimer language before the golf cart sale was finalized. Indeed, Yamaha itself may not have been aware of the disconnect between the warranty's disclaimer language and the parties' discussions concerning Swan Lake's requirement that the carts function with the GPS units. After all, the warranty states that its "effective date" is June 1, 2002—nearly four years before Swan Lake's purchase [DE 21-2].

Accordingly, construing the disclaimer language strictly against Yamaha, as I must, the uncertainty in the record as to when and how Swan Lake received the warranty prevents me from granting summary judgment against Swan Lake on its claim for breach of the implied warranty of fitness for a particular purpose.

## III. Consequential Damages

Yamaha asks the Court to find that (i) its warranty did not fail of its essential purpose; and (ii) even if the warranty did so fail, Swan Lake cannot recover consequential or incidental damages because Yamaha's warranty excluded such damages [DE 20 at 9]. This argument requires an analysis of the UCC provisions relating to damage exclusions and remedy limitations in express warranties.

IC § 26-1-2-719(1)(a) permits buyers and sellers to limit the remedy for a breach of warranty. IC § 26-1-2-719(2), however, provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in IC 26-1," which includes consequential damages. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E. 2d 941, 946-47 (Ind. 2001).[3] IC § 26-1-2-719(3), however,

---

[3] The same analysis applies to consequential and incidental damages. *Rheem,* 746 N.E. 2d at 946 n.2. For ease of reference, I will limit my discussion to consequential damages.

11

provides that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."

Yamaha's warranty provides a limited remedy. Specifically, the warranty provides that Yamaha will "repair or replace, at Yamaha's option, any part adjudged defective by Yamaha due to faulty workmanship or material from the factory" [DE 21-2].

Swan Lake presents evidence that this limited remedy failed of its essential purpose. Indiana courts find that an exclusive remedy of repair or replacement, like Yamaha's, has failed of its essential purpose where attempted repairs fail to correct the problem. *See Cimino v. Fleetwood Enters., Inc.*, 542 F. Supp. 2d 869, 887-88 (N.D. Ind. 2008); *Perry*, 814 N.E. 2d at 644. Swan Lake presents undisputed evidence that it has repeatedly complained about the battery failure to Yamaha, and that the problem remains after multiple battery replacements. Viewing this evidence in the light most favorable to Swan Lake, a jury could reasonably find that Yamaha's limited remedy failed of its essential purpose. *See Cimino*, 542 F. Supp. 2d at 887-88; *Perry*, 814 N.E. 2d at 644.

Assuming that Yamaha's limited remedy failed of its essential purpose, Swan Lake would be entitled to claim consequential damages, as provided by the UCC, unless those were excluded. So the remaining question is whether Yamaha's warranty effectively excluded consequential damages.

Indiana law provides that "an exclusion of consequential damages stands unless it is unconscionable, and unconscionability is determined by a court as a matter of law." *Rheem,* 746 N.E. 2d at 948; *see also Skodras v. Gulf Stream Coach, Inc*., No. 3:08 CV 441, 2010 WL 145370, at *6 (N.D. Ind. Jan. 8, 2010). Moreover, whether a limited remedy fails of its essential

purpose has no bearing on the analysis of the effectiveness of an attempt to exclude consequential damages. *Rheem,* 746 N.E. 2d at 948.

Swan Lake does not contend that Yamaha's attempted exclusion of consequential damages is unconscionable – nor could it. Swan Lake is a sophisticated commercial entity. It would be difficult to conceive of a situation where an exclusion of consequential damages would be invalidated under these circumstances. Perhaps that is why Swan Lake does not even seek consequential damages [DE 31 at 15]. Accordingly, I find that the warranty's exclusion of consequential and incidental damages stands. Thus, Swan Lake is not entitled to incidental or consequential damages in the event a breach of warranty is determined.

## IV. Revocation of Acceptance

In its complaint, Swan Lake asserts that it elects to revoke its acceptance of Yamaha's carts [DE 1 at 3]. Swan Lake reiterates this assertion in its response, and adds that Yamaha's attempt to cure the battery failure problem does not preclude Swan Lake from revoking acceptance [DE 31 at 13]. Revocation of acceptance is not a cause of action, but a remedy available to a buyer when goods fail to conform to the contract. IC § 26-1-2-608; *see also Hahn v. Ford Motor Co., Inc.*, 434 N.E. 2d 943, 956 n.11 (Ind. Ct. App. 1982). Yamaha has not moved for summary judgment on the issue of whether Swan Lake is entitled to revoke its acceptance of the golf carts. Correspondingly, the Court makes no finding on this issue.

## CONCLUSION

For the foregoing reasons, Yamaha's motion for summary judgment [DE 19] is **GRANTED in part** and **DENIED in part**. Specifically, Yamaha's motion is **DENIED** as it pertains to Swan Lake's claims for breach of warranty, and breach of the implied warranty of fitness for a particular purpose. Yamaha's motion is **DENIED AS MOOT** as it pertains to a

claim for breach of the implied warranty of merchantability. Yamaha's motion is also **DENIED** as it pertains to Swan Lake's claim that the written warranty failed of its essential purpose. Yamaha's motion is **GRANTED** as it pertains to any request Swan Lake may have for consequential or incidental damages.

**SO ORDERED**.

ENTERED: September 27, 2010                /s/ Philip P. Simon
                                           PHILIP P. SIMON, CHIEF JUDGE
                                           UNITED STATES DISTRICT COURT