# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| SWAN LAKE HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-228 |
| | ) | |
| YAMAHA GOLF-CAR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION and ORDER

This case was originally set for trial in December 2010, but on the morning of trial it was continued because a number of witnesses and prospective jurors were unable to make it to court due to a severe snow storm that had blanketed the area. In preparing the jury instructions for that trial date a question arose in my mind about the viability of Plaintiff's third claim for relief – revocation of acceptance. Therefore, pursuant to the newly enacted Rule 56(f), I sought briefing from both parties to determine whether the revocation of acceptance claim should go forward. The matter is now fully briefed, and, for the reasons stated below, I will grant summary judgment in favor of Defendant on that claim.

## FACTUAL BACKGROUND

Only a short refresher of the facts is required here, as a more detailed factual background about this case can be found in my Opinion and Order of September 27, 2010. [DE 39.]

Swan Lake is a golf resort in Plymouth, Indiana that in 2006 decided to upgrade its fleet of golf carts with 110 new Yamaha carts. Swan Lake bought these carts and installed a GPS system on each one. The batteries on the Yamaha carts subsequently began to fail, often resulting in golfers being stranded on the course. The batteries, it seemed, could not hold a

charge. By late May 2006, 10 or 11 of the carts had developed battery failure problems, and by late November 2006, 60 carts had become disabled by failed batteries.

Swan Lake brought the problem to Yamaha's attention, and in February 2007 Yamaha agreed to replace the original batteries in all 110 of the carts with larger capacity batteries. The larger capacity batteries worked for most of the remainder of 2007, but by the end of the year they also began to fail prematurely. In early 2008, Swan Lake replaced the batteries in 22 of the carts. More than a year went by before Swan Lake decided to send Yamaha a letter, dated March 17, 2009, stating that it was revoking its acceptance of the 110 carts despite having used the carts for more than three golf seasons. Days later, Swan Lake filed this breach of warranty suit against Yamaha in Indiana state court, which was then removed to this Court.

## DISCUSSION

The sole issue now before the Court is whether summary judgment is appropriate on Swan Lake's claim for revocation of acceptance. Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

A buyer's right to revoke acceptance of goods is codified in Section 2-608 of the Uniform Commercial Code, which has been adopted verbatim by Indiana. *See* Ind. Code § 26-1-2-608. Here's what the statute says:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

> (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

> (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

Ind. Code § 26-1-2-608(1)-(2).

There is little doubt that Swan Lake's attempted revocation meets the first half of this statute: the repeated failure of the golf cart batteries was a "non-conformity" that "substantially impair[ed]" the carts' value. Of course, it may be that the "non-conformity" of the batteries was caused by the installation of the GPS units rather than a preexisting defect, but that is a disputed factual issue to be decided at trial and thus the inference here must be that the revocation meets this element.

The real issue for present purposes is whether Swan Lake can meet the second prong of revocation. That is, did Swan Lake's revocation "occur within a reasonable time" after Swan Lake discovered the defect and before any substantial change in the condition of the goods had occurred?

On this question, the Seventh Circuit's decision in *Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34 (7th Cir. 1980), which addressed Indiana law, is controlling. In that case, the Plaintiff purchased copiers from the Defendant over the course of 1974 and 1975. In August of 1976, Plaintiff filed suit claiming breach of warranty and fraud. Plaintiff also

subsequently asserted his right to revoke acceptance of the copiers.  The district court found that the Plaintiff had properly and timely asserted this right of revocation.

The Seventh Circuit reversed, finding that Plaintiff's revocation of the copiers was not timely.  The Court noted that what constitutes "a reasonable time within which to revoke acceptance of goods depends upon the nature, purpose, and circumstances of the particular case." *Id.* at 48.  It then found that the circumstances of Plaintiff's attempted revocation of the copiers did not meet this standard.  It is true, as the Court stated, that "[a] seller's repeated assurances to cure can extend the time within which revocation is reasonable." *Id.* (citing *Jones v. Abriani*, 169 Ind. App. 556 (Ind. Ct. App. 1976)).  But it took seven months after the replacement copiers were delivered for the Plaintiff to finally revoke acceptance.  The Seventh Circuit found that seven months was too long.

The facts of this case closely track those of *Royal Business Machines*.  Swan Lake was aware of the defect in the cart batteries by May 2006 or by November 2006 at the very latest.  It is true that Yamaha assured Swan Lake that it would fix the problem and that such assurances "can extend the time within which revocation is reasonable." *Id.*  But Yamaha replaced the batteries in the Spring of 2007, a full two years before Swan Lake attempted to revoke acceptance by its March 17, 2009 letter.  Even if we focus attention on the 22 batteries replaced in early 2008, that is still more than a year before Swan Lake attempted to revoke acceptance.  If Swan Lake wanted to revoke its acceptance, it needed to do so within a more reasonable time – just as the plaintiff in *Royal Business Machines* needed to do so "long before" the seven months he took. *Id.*  The holding of *Royal Business Machines* thus commands that Swan Lake's revocation claim be dismissed.  Indeed, it is instructive that Swan Lake did not even address

*Royal Business Machines* in its briefing, much less attempt to distinguish it.

The untimeliness of the revocation is, by itself, sufficient to grant summary judgment in favor of Yamaha.  But even if Swan Lake's revocation had been timely, it would still not be a remedy available to Swan Lake because Swan Lake continued to use the carts after its attempted revocation.  The general rule is that a buyer is not permitted to continue to use goods after an attempted revocation.  This is because goods (such as golf carts) depreciate with each use.  Think of how a car depreciates with each mile that is put on it.  This rule underscores the central "purpose of revocation," namely "to cancel the sale and return the parties to *status quo ante.*"  *Smith v. Monaco Coach Corp.*, 334 F.Supp.2d 1065, 1070 (N.D. Ill. 2004).  To hold otherwise would allow a plaintiff to have his cake and eat it too.  A plaintiff could continue to use the supposedly nonconforming goods, cause them to depreciate in value, all the while continuing to press for the revocation of acceptance.  That's precisely what Swan Lake has done here.  The bottom line is that if Swan Lake did not want the carts, it should have promptly revoked their acceptance and returned them to Yamaha.  Otherwise, as "[m]any courts have held," the "[continued] use of the goods converts a rejection [or revocation] into an acceptance," which "is a reasonable outcome in most cases."  *Abriani*, 169 Ind.App. at 568.

As with most rules, there are exceptions.  A party may ask for the revocation of acceptance while continuing to use the goods when such use would amount to an absolute necessity.  *L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc.*, 9 F.3d 561, 568 (7th Cir. 1993).  Indeed, this was the case in *Abriani*, which involved the Plaintiffs' continued use of a mobile home that they had bought.  Return of the mobile home was not feasible because it was where the Plaintiffs lived and returning the item would have subjected them to a substantial

hardship – homelessness. *Abriani*, 169 Ind.App. at 568.

Swan Lake argues that its continued use of the carts after revocation was a "business necessity" that was "from a commercial standpoint ... equivalent" to the necessity in *Abriani*. [DE 82 at 2.] This is hardly persuasive. While Swan Lake needed golf carts to maintain the operations of its golf course, it had other options than to continue using the Yamaha carts it had revoked. First, the Yamaha golf carts are not, apparently, the only ones in Swan Lake's fleet. One of Swan Lake's employees, Ted Fujawa, testified in his deposition that Swan Lake also has 44 Club Car brand golf carts in its fleet. [DE 84-2 at 3-4.] Second, Swan Lake could have purchased or leased additional golf carts. This may sound harsh – forcing Swan Lake to incur additional cost while sorting out its rights as to allegedly defective Yamaha carts – but the remedy of revocation demands, absent extraordinary circumstances, that the condition and integrity of the goods be maintained. Indeed, that's the decision the Seventh Circuit reached in *L.S. Heath & Son*:

> The record indicates that [Plaintiff] continued to use the AT&T system for word processing until the last quarter of 1989. At that time [Plaintiff] purchased personal computers for those using the AT&T system for word processing and placed the AT&T system in storage-not to be used again. [Plaintiff] contends that this continued use was reasonable and necessary to mitigate damages. A buyer who revokes, however, is not permitted to dawdle for well over a year before obtaining replacements, but must search for and obtain any necessary replacements with dispatch. The continued use here was not justified and thus worked to invalidate any purported revocation.

*L.S. Heath & Son*, 9 F.3d at 568. Similarly here, Swan Lake was required to "search for and obtain any necessary replacements with dispatch" and was "not permitted to dawdle for well over a year" while continuing to use the carts. *Id.* Swan Lake's continued use "was not justified and thus worked to invalidate any purported revocation." *Id. See also Computerized*

*Radiological Services v. Syntex Corp.*, 786 F.2d 72, 75-76 (2nd Cir. 1986) (continued use of a CAT scanner for some 22 months after attempted revocation nullified the revocation because a "buyer who revokes acceptance ... must begin the search for replacement goods with reasonable dispatch").

In sum, Yamaha is entitled to summary judgment because Swan Lake's revocation was untimely. Yamaha is also entitled to summary judgment because, even if Swan Lake's revocation was timely, Swan Lake's continued use of the carts invalidated the revocation. None of this is to say, of course, that Swan Lake is left without any remedies for the allegedly defective carts it purchased. If it can prove at trial that Yamaha breached a warranty, then Swan Lake will be entitled to be made whole. But Swan Lake is left without the remedy of revocation of acceptance.

## CONCLUSION

Summary judgment is therefore granted in favor of Defendant on Count III of Plaintiff's Complaint. Trial will proceed on March 15, 2011 at 8:30 a.m. on Plaintiff's claims for breach of written warranty and breach of the implied warranty of fitness for a particular purpose.

**SO ORDERED**

ENTERED: February 28, 2011

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT